UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGE RITTENMEYER,<br><br>Plaintiff,<br><br>v.<br><br>WELLS FARGO, N.A.,<br><br>Defendant. | Case No. 1:25-cv-00621-EPG<br><br>ORDER GRANTING, IN PART, AND DENYING, IN PART, DEFENDANT'S MOTION TO DISMISS<br><br>(ECF No. 8) |

## I.    INTRODUCTION

Plaintiff's complaint brings claims under California's Elder Abuse and Dependent Adult Civil Protection Act (the Elder Abuse Act) and California's Commercial Code, generally alleging that Defendant Wells Fargo, N.A., failed to stop a fraudulent wire transfer from his savings account. (ECF No. 1).

Defendant now moves to dismiss Plaintiff's complaint under Federal Rule of Civil Procedure 12(b)(6), arguing that Plaintiff fails to state any claims upon which relief may be granted. (ECF No. 8).[1]

For the reasons given below, the Court will grant the motion in part and deny it in part.

///

///

---

[1] The parties have consented to the undersigned handling this case for all purposes. (ECF No. 16).

1

## II.   BACKGROUND

### A. Plaintiff's Complaint

Plaintiff filed his complaint on May 27, 2025, asserting diversity jurisdiction under 28 U.S.C. § 1332. (ECF No. 1). He alleges that he is a senior citizen who maintained a savings account with Defendant.

> On April 28, 2025, a representative claiming to be from Wells Fargo telephoned Plaintiff asking if Plaintiff had made a $73,063.75 wire out of Plaintiff's savings account to Beverly Hill Watch Company. Plaintiff informed the supposed Wells Fargo representative that he had not made such a wire transfer and that he was coming to the local branch immediately to dispute the wire in person.
>
> While Plaintiff was driving to the local Wells Fargo branch, Plaintiff . . . received repeated incoming calls from a number Plaintiff did not recognize (877-870-0064). The caller again claimed they were . . . calling on behalf of Wells Fargo. Plaintiff hung up and blocked the caller repeatedly.
>
> Once Plaintiff arrived at the local branch, representatives Colleen Cacciapo and Anthony Furst were able to contact the corporate representatives at Wells Fargo office to supposedly stop, or block, the wire transfer.
>
> A Lost/Stolen Transfer was made on Plaintiff's checking and savings accounts, as his accounts were deemed to be compromised, so that Plaintiff received new accounts.
>
> Plaintiff was assured by the Wells Fargo branch representatives that though the wire transfer appeared as "pending" in his account, the money would be returned to Plaintiff's account.
>
> The wire transfer was noted as "pending" in Plaintiff's savings account until on April 30, 2025, the wire transfer was allowed to go through to "JPMORGAN CHASE BAN /FTR/BNF=BEVERLY HILLS WATCH CO."

(*Id.* at 4-5).

The complaint thereafter describes Plaintiff's efforts to recover his funds through Defendant's fraud department and by filing a police report. However, to date, Defendant has not returned the funds, nor has Plaintiff otherwise recovered them.

Plaintiff asserts claims under the Elder Abuse Act and California's Commercial Code § 11202.[2]

---

[2] While Plaintiff's complaint generally cites the Uniform Commercial Code, both parties recognize Plaintiff's claim as being brought under California's Commercial Code § 11202 in their briefing on

**B.  Defendant's Motion to Dismiss**

Defendant filed its motion to dismiss on July 18, 2025. (ECF No. 8).

As for Plaintiff's Elder Abuse Act claims, Defendant argues that Plaintiff fails to allege that Defendant (1) retained any portion of the funds; or (2) assisted the third-party in obtaining the funds. (ECF No. 8-1, pp. 6-7). Regarding Plaintiff's Commercial Code claim, Defendant argues that Plaintiff fails to specifically allege what security procedures exist, whether the parties agreed to them, and how those procedures are not commercially reasonable. (*Id.* at 7).

Plaintiff filed his opposition on August 15, 2025. (ECF No. 12). As for his Elder Abuse Act claims, he argues that Defendant (1) retained his funds by refusing to reimburse him for the unauthorized wire transfer; and (2) assisted the third-party in obtaining the funds because it had actual notice that the transfer was unauthorized and still allowed it to proceed. (*Id.* at 12-13). Regarding his Commercial Code claim, he argues that no security procedures existed, and because he did not authorize the transfer, Defendant must bear the loss under the Commercial Code's general rule. (*Id.* at 15-17).

Defendant filed its reply on August 25, 2025, reiterating its arguments from its motion to dismiss. (ECF No. 14).

After briefing on Defendant's motion to dismiss was completed, the parties consented to the undersigned handling the case for all purposes, and it was reassigned on December 17, 2025. (ECF No. 16).

**III.    LEGAL STANDARDS**

Motions to dismiss under Fed. R. Civ. P. 12(b)(6) may be based on "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019) (citation omitted). To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim

---

Defendant's motion to dismiss. (ECF No. 8-1, p. 7; ECF No. 12, p. 15). Accordingly, this order refers to Plaintiff alleging a violation of California's Commercial Code.

is plausible when a plaintiff pleads facts that permit the court to reasonably infer the defendant's liability for the alleged misconduct. *Id.* A complaint does not suffice if it offers only "labels and conclusions," a "formulaic recitation of the elements," or "naked assertion[s] devoid of further factual enhancement." *Id.* (quoting *Twombly*, 550 U.S. at 555, 557).

When ruling on a motion to dismiss, the court must accept all well-pleaded factual allegations as true and construe all inferences in the light most favorable to the non-moving party. *Barker v. Riverside Cnty. Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009) (citations omitted). The court need not, however, "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988, *opinion amended on denial of reh'g,* 275 F.3d 1187 (9th Cir. 2001).

## IV.    ANALYSIS

### A.  Elder Abuse Claims

Plaintiff's complaint alleges two ways that Defendant violated the Elder Abuse Act: (1) Defendant directly retained his funds; and (2) Defendant assisted another in taking his funds. (ECF No. 1, p. 6 – "Wells Fargo violated the 'direct retention' aspect of this law and also violated the 'assistance' aspect of the Elder Abuse law."). The Court addresses each in turn.

#### 1.  Direct retention

First, financial abuse of an elder person occurs when an entity "[t]akes, secretes, appropriates, obtains, or *retains* real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud, or both." Cal. Welf. & Inst. Code § 15610.30(a)(1) (emphasis added). In turn, an entity retains property for wrongful use if it "retains the property and the person or entity knew or should have known that this conduct is likely to be harmful to the elder or dependent adult." Cal. Welf. & Inst. Code § 15610.30(b).

Defendant argues that "Plaintiff does not allege that [it] 'retained' any portion of the disputed wire" but rather "concedes that the wire was sent to a third-party account at JPMorgan Chase" and thus "[t]he funds would therefore be 'retained' by the owner of the JPMorgan Chase account, not [Defendant]." (ECF No. 8-1, p. 6).

Citing cases discussed further below, Plaintiff counters that "[c]ourts have held that withholding funds owed to an elder under a contract or due back following fraud can support a finding of wrongful retention" and that because Defendant has not returned the funds, it can be considered to be wrongfully retaining them. (ECF No. 12, p. 12).

Defendant's reply argues that Plaintiff's cited cases are distinguishable because they "arise from the insured-insurer context and include clear contractual obligations." (ECF No. 14, p. 3).

Upon consideration, the Court concludes that Plaintif's complaint fails to allege facts supporting a violation of the Elder Abuse Act.

Under the Elder Abuse Act, an entity "retains" property "when an elder . . . is deprived of any property right, including by means of an *agreement*, donative transfer, or testamentary bequest, regardless of whether the property is held directly or by a representative of an elder." Cal. Welf. & Inst. Code § 15610.30(c) (emphasis added). An entity does not violate § 15610.30(a)(1) when it simply processes a transaction involving a third party. *See, e.g., Bortz v. JP Morgan Chase Bank, N.A.*, No. 22-55582, 2023 WL 4700640, at *1 (9th Cir. July 24, 2023) (unpublished) (finding no direct retention claim where "[p]laintiffs' complaint alleges that the scammers took their life savings, not [the defendant]"); *Miller v. Bank of Am., N.A.*, No. 1:21-cv-00337-JLT, 2022 WL 3704093, at *5 (E.D. Cal. Aug. 26, 2022) (concluding that where "an account owner initiated the transfers, third party scammers obtained the funds, and the defendant bank merely processed the transactions, there is no claim for a 'direct taking'").

Moreover, Plaintiff's cited cases do not support his claim. In *Paslay v. State Farm Gen. Ins. Co.*, 248 Cal. App. 4th 639 (2016), the plaintiff alleged that an insurance company committed elder "abuse by failing to pay policy benefits" due under a homeowner's policy, *id.* at 643, and the Court concluded that "a party may engage in elder abuse by misappropriating funds to which an elder is entitled under a contract," *id.* at 656, but "wrongful conduct occurs only when the party who violates the contract actually knows that it is engaging in a harmful breach, or reasonably should be aware of the harmful breach," *id.* at 658. Here, Plaintiff does not allege that Defendant is breaching any contract by failing to pay the funds.

Further, Plaintiff's other cited cases similarly are based on failures to pay amounts due under private contracts. *See O'Brien as Tr. of Raymond F. O'Brien Revocable Tr. v. XPO CNW, Inc.*, 362 F. Supp. 3d 778, 786 (N.D. Cal. 2018) (concluding that facts regarding breach of contract for monthly retirement payments, coupled with sufficient dispute as to improper motive, supported allowing elder abuse claim to proceed); *Mahan v. Charles W. Chan Ins. Agency, Inc.*, 14 Cal. App. 5th 841, 866 (2017) (finding cognizable elder abuse claim in case involving life insurance policy where defendants had improper pecuniary motive in influencing transaction).

Accordingly, the Court concludes that Plaintiff's complaint fails to allege that Defendant retained Plaintiff's property for a wrongful use or with intent to defraud under the Elder Abuse Act. Cal. Welf. & Inst. Code § 15610.30(a)(1).

### 2.  Assistance

Second, financial abuse of an elder person can also occur when an entity "*[a]ssists in taking*, secreting, appropriating, obtaining, or retaining real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud, or both."  Cal. Welf. & Inst. Code § 15610.30(a)(2) (emphasis added).

Defendant argues that "there are no allegations that [it] had advance knowledge that a third-party fraudster intended to initiate the wire; and there are no allegations that [it] assisted the third-party fraudster with initiating the wire;" and thus Plaintiff has failed to allege that it "'assisted' the fraudster with his alleged scheme." (ECF No. 8-1, p. 6).

Plaintiff counters that "the complaint alleges that Defendant had actual knowledge of the fraud when it processed the wire transfer" because it "details how Plaintiff immediately stated that he had not authorized the transfer and went to the local branch to dispute it in person, where branch representatives were able to contact the corporate representatives at Defendant office to supposedly stop, or block, the wire transfer." (ECF No. 12, p. 13-14).

Defendant's reply argues that Plaintiff fails to explain how it could have stopped the funds transfer while it was already pending nor "allege that [it] had advance notice of the wire or otherwise aided the bad actor." (ECF No. 14, p. 2).

Courts have held that a Defendant must have actual knowledge of a third party's wrongful use in order to be liable for assisting another in taking property under the Elder Abuse Act:

> A defendant may be found liable for assisting in financial elder abuse under an aiding and abetting standard. *Das v. Bank of Am., N.A.*, 186 Cal. App. 4th 727, 744–45 (2010). To state such a claim, the plaintiff must plead that the defendant "knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act." *Id.* at 744. When "a bank provides ordinary services that effectuate financial abuse by a third party, the bank may be found to have 'assisted' in the financial abuse only if it knew of the third party's wrongful conduct." *Id.* at 745. To be liable for elder abuse, there must be actual knowledge, not constructive knowledge. *Bortz v. JPMorgan Chase Bank, N.A.*, No. 21-cv-618-TWR, 2021 WL 4819575, at *5 (S.D. Cal. Oct. 15, 2021).

*Alexander v. Wells Fargo Bank, N.A.*, No. 23-CV-617-DMS-BLM, 2023 WL 8358550, at *4 (S.D. Cal. Dec. 1, 2023).

While Plaintiff points to "the suspicious circumstances" of the funds transfer, courts in analogous cases have concluded that suspicion of fraud is not enough to state a claim for elder abuse. (ECF No. 12, p. 13); *see Smith v. Wells Fargo Bank, N.A.*, No. 25-CV-00719-HSG, 2025 WL 2781738, at *9 (N.D. Cal. Sept. 30, 2025) (concluding that plaintiff failed to plead actual knowledge even though plaintiff notified defendant of the fraud as "[t]his notice may have put Defendants on alert that 'something fishy was going on,' but it does not establish that Defendants had actual knowledge that Robert Jr. had breached his fiduciary duty by stealing Plaintiff's money"); *Rahimian v. Wells Fargo Bank N.A.*, No. CV 24-03787 KS, 2024 WL 4818797, at *13 (C.D. Cal. Sept. 20, 2024) (concluding that plaintiff failed to allege that defendant assisted a fraudulent transaction with actual knowledge of the fraudster's conduct where plaintiff alleged that he never authorized wire transactions, a representative from defendant's fraud department contacted plaintiff about suspicious activity, plaintiff confirmed he did not know about the suspicious activity, and the representative insisted that defendant would take care of the matter and return funds); *Alexander*, 2023 WL 8358550, at *4 (concluding that plaintiff failed to allege that defendant had actual knowledge and provided substantial assistance or encouragement to fraudster despite plaintiff alleging that "Defendant

informed him 'that an unknown individual accessed his accounts and switched Plaintiff's contact information,'" that defendant's conduct was authorized by a higher-up, and that the disputed transactions were not reversed).

Accordingly, the Court concludes that Plaintiff's complaint fails to allege that Defendant violated the Elder Abuse Act by assisting the fraudster in taking his funds. Cal. Welf. & Inst. Code § 15610.30(a)(2).

### B. Commercial Code Claim

Plaintiff's complaint also claims that Defendant violated the Commercial Code "by permitting the unauthorized wires to proceed" and by "fail[ing] to maintain security procedures specifically designed to protect customers such as [him]." (ECF No. 1, pp. 6-7).

Under the California Commercial Code, a bank must refund a customer for unauthorized fund transfers:

> If a receiving bank accepts a payment order issued in the name of its customer as sender which is (i) not authorized and not effective as the order of the customer under Section 11202 . . . the bank shall refund any payment of the payment order received from the customer to the extent the bank is not entitled to enforce payment and shall pay interest on the refundable amount calculated from the date the bank received payment to the date of the refund.

Cal. Com. Code § 11204(a).

However, a bank need not refund fund transfers where an order is (1) authorized or (2) effective as the order of the customer, although unauthorized, because of reasonable available security procedures:

> (a) A payment order received by the receiving bank is the authorized order of the person identified as sender if that person authorized the order or is otherwise bound by it under the law of agency.

> (b) If a bank and its customer have agreed that the authenticity of payment orders issued to the bank in the name of the customer as sender will be verified pursuant to a security procedure, a payment order received by the receiving bank *is effective as the order of the customer, whether or not authorized*, if (i) the *security procedure is a commercially reasonable method* of providing security against unauthorized payment orders, and (ii) the bank proves that it accepted the payment order in good faith and in compliance with the bank's obligations under the security procedure and any agreement or instruction of the customer, evidenced by a record, restricting acceptance of payment orders issued in the

> name of the customer. The bank is not required to follow an instruction that violates an agreement with the customer, evidenced by a record, or notice of which is not received at a time and in a manner affording the bank a reasonable opportunity to act on it before the payment order is accepted.

Cal. Com. Code § 11202(a)-(b) (emphasis added).

In turn, a "security procedure" is defined as

> a procedure established *by agreement* of a customer and a receiving bank for the purpose of (i) verifying that a payment order or communication amending or canceling a payment order is that of the customer, or (ii) detecting error in the transmission or the content of the payment order or communication.

Cal. Com. Code § 11201 (emphasis added).

Defendant argues that Plaintiff fails to state a claim because he "simply declares that [its] security procedures are inadequate without alleging what the security procedures entail, whether Plaintiff and [it] agreed to the procedures, and why/how the procedures are not commercially reasonable under section 11202(b)." (ECF No. 8-1, p. 7).

However, Plaintiff counters that the transfer was not justified by any security procedure, and points to the allegation in the complaint that "Wells Fargo fails to maintain security procedures specifically designed to protect customers such as [him]." (ECF No. 1, p. 7).

> At the pleading stage, Plaintiff lacks knowledge of any security procedures that applied to the transaction at issue. [Complaint, ¶¶ 7, 40]. Because this information is uniquely within Defendant's possession, Plaintiff cannot allege further detail at this juncture *but reasonably infers that no such procedures existed* for two reasons.
>
> First, effective security procedures require a mutual agreement between the parties. Plaintiff, however, does not recall entering into any such agreement and does not possess a copy of security procedures applicable to wire transfers.
>
> Second, adequate security procedures would have required direct communication between Plaintiff and Defendant to confirm and detect any potential error before the wire was initiated. No such communication occurred until after the wire had already been sent. [Complaint, ¶ 18]. It was Plaintiff, not Defendant, who identified the error, promptly alerted Defendant, and implored Defendant to stop the transaction while it was still pending. [Id., ¶¶ 19–23]. . . .
>
> Given Plaintiff's lack of any recollection of an agreement regarding wire security procedures, the uniquely suspicious nature of the transaction, which should have alerted Defendant, and Plaintiff's timely efforts to prevent the loss, Plaintiff reasonably infers the absence of any applicable security procedures on Defendant's part. Plaintiff intends to investigate Defendant's purported procedures in discovery. While Defendant may challenge this issue at the

> summary judgment stage, doing so now contradicts Plaintiff's allegations and improperly demands detail that is beyond Plaintiff's present knowledge. Accordingly, Defendant's Motion should be denied.

(ECF No. 12, pp. 15-16) (emphasis added).

As one court has noted in analogous circumstances, where a plaintiff alleges that he did not authorize a wire transfer and the defendant did not offer security procedures, the plaintiff states a claim under the Commercial Code:

> Here, Plaintiff alleges that Defendant accepted an unauthorized wire transfer in his name. (FAC ¶¶ 29, 30.) Plaintiff further avers he never agreed to any security procedures for the verification of payment orders. (*Id.* ¶ 32.) . . . .
>
> Defendant argues that Plaintiff "does not disprove the existence of security measures." (Mot. at 17; Reply at 6.) However, that is not relevant at the motion to dismiss stage; the Court reviews allegations, not proof. Nor does Defendant address Plaintiff's first set of allegations, namely, that there were no agreed-upon security procedures, and the wire transfer was unauthorized.
>
> Plaintiff has successfully stated a claim under division 11 of the California Commercial Code. Accordingly, the Court DENIES Defendant's motion to dismiss Plaintiff's claim under California Commercial Code §§ 11201 *et seq.*

*Zhang v. Bank of Am., N.A.*, No. 2:25-CV-03999-JLS-E, 2025 WL 3049867, at *2 (C.D. Cal. Sept. 15, 2025); *see* Cal. Com. Code § 11203, Comment 3 ("Subsection (b)(i) assures that the interests of the customer will be protected by providing an incentive to a bank to make available to the customer a security procedure that is commercially reasonable. If a commercially reasonable security procedure is not made available to the customer, subsection (b) does not apply. The result is that subsection (a) applies and the bank acts at its peril in accepting a payment order that may be unauthorized. Prudent banking practice may require that security procedures be utilized in virtually all cases except for those in which personal contact between the customer and the bank eliminates the possibility of an unauthorized order.").

Here, the Court likewise concludes that Plaintiff's allegations are sufficient to state a claim under the Commercial Code.

## V.    CONCLUSION AND ORDER

For the reasons explained above, IT IS ORDERED as follows:

1. Defendant's motion to dismiss (ECF No. 8) is granted to the extent that Plaintiff's Elder Abuse Act claims—as alleged under Cal. Welf. & Inst. Code § 15610.30(a)(1)-(2) in

Count 1 of the complaint—are dismissed.[3]

2. Defendant's motion to dismiss (ECF No. 8) is denied to the extent that the case will proceed on Plaintiff's Commercial Code claim—as alleged under Cal. Com. Code § 11202 in Count 2 of the complaint.

3. Within 10 days from the date of the entry of this order, the parties shall contact Courtroom Deputy Felicia Navarro (fnavarro@caed.uscourts.gov) to secure a new scheduling conference date. (ECF No. 9).

IT IS SO ORDERED.

Dated:    **February 9, 2026**                    /s/ Erica P. Grosj

                                                 UNITED STATES MAGISTRATE JUDGE

---

[3] In his opposition, Plaintiff states "Should this Court grant Defendant's Motion in whole, or in part, Plaintiff request[s] leave to amend to cure the operative pleading of any perceived deficiencies." (ECF No. 12, p. 7). However, Plaintiff does not indicate what additional facts he could allege in an amended pleading. Thus, while the Court is not granting Plaintiff leave to amend at this time, nothing in this order precludes Plaintiff from seeking leave to amend if he believes that he can allege facts that would address the deficiencies discussed in this order.